IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ABDELHAMID AJAK, et al., §
§
Plaintiffs, §
§
VS. § Civil Action No. 3:26-CV-2013-D
§
DELTA MUNCHIES LLC d/b/a §
MUNCHIES!, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this removed diversity action alleging claims under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2021), and state law, defendant Delta Munchies LLC d/b/a Munchies! ("Delta") moves to dismiss plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons explained, the court grants the motion in part, denies it in part, and grants plaintiffs leave to replead.

I

Plaintiffs Abdelhamid Ajak and Feras Ajak (collectively, the "Ajaks") own and operate retail smoke shops that sell hemp-derived products. Plaintiff Skyrise Forney LLC ("Skyrise") is the entity through which the Ajaks operate their store located in Forney, Texas ("Forney Store").[1]

[1]The court recounts the background facts favorably to plaintiffs as the nonmovants. In deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as

Delta manufactures and sells consumable hemp products, including a hemp-derived vape product marketed as the "2g Lil Ripper Liquid Diamond THCA Vape" ("Lil Ripper Vape"). Delta represented through its website, labeling, packaging, QR-code certificates of analysis ("COA") access, and COA materials that its Lil Ripper Vape product was a lawful, compliant hemp product suitable for retail sale in Texas.

In 2025 Skyrise purchased 10 units of Lil Ripper Vapes from nonparty Monster Smoke Wholesale, a wholesaler of Delta's products. Plaintiffs allege that Skyline they relied on Delta's representations in deciding to purchase, stock, and resell the Lil Ripper Vapes.

Shortly after Skyrise's purchase, law enforcement laboratory testing on the Lil Riper Vapes indicated that they contained illegal levels of THC. Based on these lab results, law enforcement raided the Forney Store, seized the Ajaks' personal property, seized or froze approximately $4.8 million in funds, and arrested the Ajaks. The Ajaks were charged with first-degree felony manufacture and delivery of a controlled substance, and both pleaded guilty. This civil action followed.

In plaintiffs' first amended complaint ("amended complaint"), which is the operative pleading, the Ajaks and Skyrise sue Delta, alleging claims under the DTPA for false, misleading, and deceptive acts; breach of express warranty; breach of implied warranty of merchantability; breach of implied warranty of fitness for a particular purpose; and

---

true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

unconscionable action or course of action. Plaintiffs also assert claims under Texas common law for fraud and fraudulent inducement, negligent misrepresentation, products liability/strict liability, negligence, and gross negligence. Delta moves to dismiss the amended complaint under Rules 12(b)(6) and 9(b). Plaintiffs oppose Delta's motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (first alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. (internal quotation marks omitted) (quoting *Benchmark Elecs*., 343 F.3d at 724). More colloquially, the plaintiffs must plead the "who, what, when, where, and how" of the fraud. *United States ex rel. Williams v. Bell Helicopter Textron, Inc*., 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997)).

III

Delta moves to dismiss the Ajaks' DTPA claims on the ground that they have failed to plausibly plead that they are "consumers" under the DTPA.

A

The DTPA provides consumers a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code Ann. § 17.50(a); *Amstadt v. U.S. Brass Corp*.,

919 S.W.2d 644, 649 (Tex. 1996).

> The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury.

*Windle v. Synthes USA Prods., LLC*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (Fitzwater, C.J.) (citing Amstadt, 919 S.W.2d at 649). "The question of whether a party is a consumer [under the DTPA] is a question of law." *Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, at *2 (N.D. Tex. July 21, 2010) (Boyle, J.) (citation omitted). The DTPA defines a consumer as:

> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Tex. Bus. & Com. Code Ann. § 17.45(4).

B

The amended complaint does not allege that the Ajaks sought or acquired any good or service. Instead, it expressly asserts that "[Skyrise], using its internal store designation SkyRise S2, purchased Munchies Lil Ripper Strawberry Shortcake units," and that the invoice identifies the purchaser/consumer as "Adham Salah and Company SkyRise S2." Am. Compl. ¶¶ 43, 45. Because plaintiffs do not allege that the Ajaks sought or acquired any

good or service and, in fact, expressly plead that it was Skyrise who purchased the Lil Ripper Vapes, the court grants Delta's motion to dismiss the Ajaks' DTPA claims.[2]

IV

Delta moves to dismiss the Ajaks' common law claims for fraud, negligent misrepresentation, products liability, and negligence to the extent that the Ajaks seek to recover for injuries to Skyrise's business (i.e., lost profits, seized inventory, frozen business accounts, and business interruption). As with the Ajaks' DTPA claim, plaintiffs do not appear to dispute that the Ajaks cannot recover for injuries to Skyrise's business. They contend that the Ajaks have asserted claims for injuries they personally sustained (criminal-defense costs, personal property seizures, personal funds, reputational injury, and other individual losses), and posit that "[w]hether the individual Ajaks possess legally cognizable personal claims for their separately alleged injuries presents a different question that must be evaluated under the elements of the particular cause of action." Ps. Br. (ECF No. 22) at 10-11.

The parties appear to agree that the Ajaks cannot recover under any of their common law causes of action for injuries to Skyrise's business. In fact, the Ajaks specifically allege in the amended complaint that they "do not seek to recover an LLC's injury through an

[2]Plaintiffs do not appear to dispute that they have not alleged that the Ajaks are "consumers" under the DTPA. *See* Ps. Br. (ECF No. 22) at 12 (stating that the court "need not resolve the outer boundary of the Ajaks' individual consumer status to decide [Delta's] motion," and that "[a]ny ruling concerning the individual Ajaks' DTPA claims should . . . be confined to those individuals and should not affect Skyrise's DTPA claims.").

individual member except to the extent an individual Plaintiff has a separate, direct, personal injury and right of recovery under applicable law." Am. Compl. ¶ 16.

Accordingly, the court grants this ground of Delta's motion. To the extent that the Ajaks seek to recover for injuries to Skyrise's business, their claims are dismissed.

V

Delta moves to dismiss plaintiffs' DTPA and common law fraud-based claims (i.e., their claims for fraud and fraudulent inducement) on the ground that plaintiffs have not plausibly alleged that Delta had actual awareness that its representations were false when it made them.

A

The court begins with plaintiffs' common-law fraud claims. To recover against Delta for fraud under Texas law, plaintiffs must prove that Delta (1) made a material representation; (2) it was false when made; (3) Delta knew the representation was false or made it recklessly without knowledge of its truth and as a positive assertion; (4) Delta made the representation with the intent that plaintiffs should act upon it; and (5) plaintiffs acted in reliance upon it and suffered injury as a result. *Hoffman v. L & M Arts*, 2013 WL 4511473, at *1 (N.D. Tex. Aug. 26, 2013) (Fitzwater, C.J.) (citing *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (applying Texas law)). To establish a claim under Texas law for fraudulent inducement, a plaintiff must prove all of the elements of fraud as well as "an underlying contract which was induced." *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th

Cir. 2011) (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001 ). At the Rule 12(b)(6) stage, a plaintiff must plead such a claim that is plausible on its face. *Twombly*, 550 U.S. at 570.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This aspect of the rule "relaxes the particularity requirement for conditions of the mind, such as scienter." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Nevertheless, "case law amply demonstrates that pleading scienter requires more than a simple allegation that a defendant had fraudulent intent." *Id.* Plaintiffs "must set forth specific facts that support an inference of fraud." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020) (quoting *Tuchman*, 14 F.3d at 1068).

B

Plaintiffs have not plausibly alleged that Delta knew or should have known that its representations regarding the legality, safety, chemical composition, testing, certification, and compliance of the Lil Ripper Vapes were false. They allege in the amended complaint that Delta's

> actual awareness may be inferred from its control over the product's formulation, manufacturing, labeling, testing, COAs, QR-code COA process, website representations, and shipment-compliance representations, as well as the mismatch between Defendant's representations and the actual test results.

Am. Compl. ¶ 122. But control over the various aspects of its products, testing, and labeling

is insufficient, without more, to permit the court to draw the reasonable inference that, at the time of the alleged misrepresentations, Delta knew or should have known that they were false. *See, e.g.*, *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 526 (Tex. 1998) ("A statement is not fraudulent unless the speaker knew it was false when made or the speaker made it recklessly without knowledge of the truth."). And courts have repeatedly held that conclusory assertions, such as that a defendant "knew the representations were false or made them recklessly without knowledge of their truth," Am. Compl. ¶ 131, are insufficient. *See Tuchman*, 14 F.3d at 1068 ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading." (quoting *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992))).

Because plaintiffs have failed to allege specific facts that would enable the court to draw the reasonable inference that Delta knew, or should have known, that its representations regarding its Lil Ripper Vape product were false, the court grants Delta's motion to dismiss plaintiffs' common law claims for fraud and fraudulent inducement.

C

To the extent that the Ajaks bring common law claims for fraud and fraudulent inducement, these claims are also subject to dismissal for a separate reason. The amended complaint does not allege that Delta materially misrepresented any fact *to the Ajaks*, and does not allege that the Ajaks, apart from Skyrise, justifiably relied on any such misrepresentations

or omissions. In fact, the amended complaint specifically alleges that it was Skyrise (not the Ajaks) who "relied on [Delta]'s website, QR-code COA, COA linked on the package, product labeling, product packaging, and compliance representations in deciding to purchase, stock, and resell the [Lil Ripper Vapes]." Am. Compl. ¶ 49; *see also id.* ¶ 130 (alleging that Adham Salah, the Skyrise employee who reviewed Delta's website representations, and Skyrise "relied on Defendant's website representations and COA in deciding to purchase the product for retail sale at Skyrise").

D

The court now turns to Skyrise's DTPA claims.[3] Under the DTPA, a court may award up to three times the economic damages for a knowing or intentional violation of the DTPA. Tex. Bus. & Com. Code Ann. § 17.50(b)(1). A knowing or intentional violation occurs when there was actual awareness of the falsity or deception at the time it occurred. *Id.* § 17.45(9); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 395 (Tex. App. 2010, pet. denied). Actual awareness means that "a person knows that what he is doing is false, deceptive, or unfair." *St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co.*, 974 S.W.2d 51, 53-54 (Tex. 1998). The court has already concluded that plaintiffs have failed to plead that Delta acted knowingly. Plaintiffs' failure to plausibly allege that Delta knew or should have known that its representations were false also precludes them from pursuing enhanced remedies for knowing or intentional violations of the DTPA.

[3]Because the court is dismissing the Ajaks' DTPA claims on the ground that the Ajaks are not "consumers," it addresses defendants' remaining DTPA arguments only as to Skyrise.

VI

Delta moves to dismiss Skyrise's DTPA claim for breach of implied warranty of merchantability[4] on the grounds that (1) plaintiffs do not allege that the Lil Ripper Vape failed to work as a vape and (2) legal non-compliance is not a merchantability defect because the ordinary-purpose warranty does not guarantee a product's regulatory saleability. Plaintiffs respond that they are not pursuing an "ordinary-purpose" merchantability claim; they have alleged a violation under Tex. Bus. & Com. Code Ann. § 2.314(b)(6) (West 2025), which requires that goods "conform to the promises or affirmations of fact made on the container or label if any"; and "[i]f a consumable product is sold under one chemical description but contains materially different constituents, the allegations implicate the statutory requirements that goods conform to their description, labeling, and factual affirmations," Ps. Br. (ECF No. 22) at 15.

A Texas breach of implied warranty of merchantability claim has four elements: (1) the defendant sold or leased a product to the plaintiff, (2) the product was unmerchantable, (3) the plaintiff notified the defendant of the breach, and (4) the plaintiff suffered injury. *Phillips v. Ethicon Endo-Surgery, Inc.*, ___ F.4th ___, 2026 WL 2969090, at *3 (5th Cir. Oct. 2, 2026) (quoting *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App. 2003, no pet.)). A product is considered unmerchantable under Tex. Bus. & Com. Code Ann. §

[4]Delta has not moved to dismiss Skyrise's DTPA claim for breach of express warranty. *See* D. Br. (ECF No. 13) at 7 (arguing only that Ajak plaintiffs' DTPA breach of express warranty claim should be dismissed because the Ajaks are not "consumers.")

2.314(b)(6) "if it does not conform to the promises or affirmations of fact which are on the product's container or label." *Polaris Indus.*, 119 S.W.3d at 336 (citing Tex. Bus. & Com. Code Ann. § 2.314(b)(6)).

Plaintiffs have plausibly pleaded that Delta breached the implied warranty of merchantability as to Skyrise because they allege that the Lil Ripper Vape product "was not accurately labeled, did not conform to [Delta]'s representations, contained cannabinoid content materially different from what [Delta] represented, and was not lawfully saleable in Texas as represented." Am. Compl. ¶ 104.[5] Accordingly, the court denies this ground of Delta's motion to dismiss.

VII

Delta moves to dismiss Skyrise's DTPA claim for breach of implied warranty of fitness for a particular purpose on the grounds that (1) the amended complaint fails to identify why or how Delta had reason to know of any particular purpose for which plaintiffs selected the products at issue and (2) resale by a retail smoke shop is the ordinary use for which

[5]Delta contends in its reply that plaintiffs' non-conformity theory under § 2.314(b)(6) "is the same fraud/misrepresentation theory repackaged and fails for the same reasons discussed above." D. Reply (ECF No. 23) at 3. To the extent that Delta intends to argue that Skyrise's DTPA implied warranty claim fails because plaintiffs have not plausibly alleged knowing or intentional behavior, the court has held, above, that Skyrise has not pleaded sufficient facts to support an award of enhanced remedies under Tex. Bus. & Com. Code Ann. § 17.50(b)(1). *See supra* § V(D). But as plaintiffs correctly contend, "Delta's argument concerning actual awareness . . . cannot support dismissal of every substantive DTPA misrepresentation theory merely because Plaintiffs may ultimately face a higher evidentiary burden for treble damages." Ps. Br. (ECF No. 22) at 14.

wholesale vape products are sold.

Under Texas law, an implied warranty of fitness for a particular purpose arises when the seller, at the time of the transaction, has reason to know of the particular purpose for which the goods are required, and the buyer is relying on the seller's skill or judgment to select or furnish goods suitable for that particular purpose. *See* Tex. Bus. & Com. Code Ann. § 2.315. An implied warranty of fitness for a particular purpose does not arise, however, unless the buyer's purpose for the goods differs from the usual and ordinary use of the goods. *Coghlan v. Aguasport Marine Corp*., 73 F.Supp.2d 769, 774 (S.D. Tex. 1999) ("In other words, the particular purpose must be some unusual, out of the ordinary purpose peculiar to the needs of an individual buyer."); *see also* Tex. Bus. & Com. Code Ann. § 2.315 cmt. 2 ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business.").

In their response, plaintiffs contend that the pleaded purpose was not merely "resale" and that Skyrise required products "suitable for lawful Texas resale as compliant hemp products possessing the represented cannabinoid characteristics, without exposing the retailer to the legal consequences associated with selling a controlled substance." Ps. Br. (ECF No. 22) at 16. Delta replies that "lawful Texas retail sale as compliant hemp" is not a particular purpose; it remains the ordinary purpose of a wholesale help vape sold for resale, not a use particular to Skyrise for which it relied on Delta to select the goods. D. Reply (ECF No. 23) at 3-4. The court agrees. Plaintiffs have not plausibly pleaded that Skyrise's purpose for buying the Lil Ripper Vapes—lawful resale in Texas—differs from the usual and ordinary

use or that Delta had any reason to know that Skyrise was relying on Delta's skill or judgment to select or furnish goods suitable for a particular purpose. Accordingly, the court grants Delta's motion to dismiss this claim.[6]

VIII

Delta next moves to dismiss Skyrise's DTPA claim for unconscionable action or course of action. It contends that the amended complaint fails to allege facts about the Ajaks' or Skyrise's specific knowledge, ability, experience, or capacity, or how Delta was aware of and exploited any particular vulnerability; Skyrise and Delta are equally sophisticated commercial entities; and Skyrise's unconscionability claim is merely a repackaged false advertising/marketing defect or breach of warranty claim that fails to allege conduct taking advantage of customers to a grossly unfair degree.

The DTPA defines an unconscionable action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5). To be actionable under this section of the DTPA, "the resulting unfairness must be 'glaringly noticeable, flagrant, complete and unmitigated.'" *Latham v. Castillo*, 972

---

[6]Plaintiffs recognize in their response that "§ 2.315 distinguishes a particular purpose from an ordinary purpose" and that "[w]hether the purpose pleaded here is sufficiently distinct from the product's ordinary commercial purpose may ultimately require further development." Ps. Br. (ECF No. 22) at 16. They request that, if the court concludes that they have not sufficiently distinguished the particular purpose from ordinary retail sale, they be given leave to amend. *Id.* at 17. As explained below, *see infra* § XII, the court is granting plaintiffs leave to amend with respect to the dismissed claims, including their DTPA claim for breach of implied warranty of fitness for a particular purpose.

S.W.2d 66, 68 (Tex. 1998) (citation omitted). "To plead a DTPA claim based on unconscionable conduct, there must be more than an allegation of a breach of warranty or contract or false advertising." *Hernandez v. Safariland, LLC*, 824 F.Supp.3d 581, 597 (W.D. Tex. 2026) (citing cases); *see also Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (affirming dismissal of DTPA claim based on unconscionability where plaintiff alleged no more than a repackaged claim for breach of contract).

In support of their unconscionability claim, plaintiffs allege that Delta had superior knowledge regarding the Lil Ripper Vapes; that it took advantage of their "lack of knowledge, ability, experience, or capacity to independently verify Defendant's formulation, batch-level testing, true cannabinoid content, HHC content, THCA content, delta-9 THC content, and legal compliance status to a grossly unfair degree," Am. Compl. ¶ 114; and that Delta's conduct

> produced a gross disparity between what Plaintiffs were promised—lawful, compliant, accurately labeled THCA hemp products—and what Plaintiffs received—products that tested above lawful delta-9 THC limits, failed to contain represented TCHA content, contained substantial HHC and cannabinoid/isomer content, and exposed Plaintiffs to criminal prosecution, forfeiture, asset seizure, and business-destruction consequences,

*id.* ¶ 117.

The court holds that plaintiffs have failed to plausibly plead unconscionable action or a course of action. The facts on which plaintiffs base their DTPA unconscionability claim are the same basic facts as those on which they base their DTPA warranty claim, *see id.*¶ 100

(alleging that Delta breached its warranties because the Lil Ripper Vapes "did not conform to the warranted characteristics, cannabinoid composition, compliance status, quality, testing, labeling, and safety representations"), and plaintiffs' conclusory allegation that Delta's conduct was "grossly unfair" or produced a "gross disparity" is insufficient, without more, to plausibly allege a DTPA unconscionability claim. *See, e.g.*, *Gunes v. Jaguar Land Rover N. Am. LLC*, 2023 WL 6370780, at *3 (S.D. Tex. May 24, 2023) (dismissing DTPA unconscionability claim where "Plaintiff merely allege[d] facts amounting to a breach of warranty claim, and then recite[d] boilerplate statutory language from the DTPA."); *Begood v. Nissan N. Am., Inc.*, 2016 WL 3566689, at *4 (W.D. Tex. June 24, 2016) (dismissing DTPA unconscionability claim because it "ultimately rests on the[] allegation that Nissan falsely advertised the Pathfinder was free from inherent risk of failure or latent defects, when the Pathfinder was not, in fact, free from latent defects as was promised," and the claim for unconscionable conduct "amounts to a breach of contract claim" (quoting *Shakeri*, 816 F.3d at 295)). In other words, plaintiffs have failed to allege "more than . . . a breach of warranty or contract or false advertising." *Hernandez*, 824 F.Supp.3d at 597. Accordingly, the court grants Delta's motion to dismiss this claim.

IX

Delta moves to dismiss plaintiffs' claims for negligence, gross negligence, and negligent misrepresentation on the ground that these claims are barred by the economic loss rule.

A

“The economic loss rule generally precludes recovery in tort for economic losses resulting from a party’s failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.” *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam) (citations omitted). Not all tort claims, however, “arising out of a contractual setting” are precluded by the rule. *Id.* To determine whether the economic loss rule bars a tort claim, the court must “analyze[] both the source of the duty and the nature of the remedy.” *Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors*, Inc., 960 S.W.2d 41, 45 (Tex. 1998). If “the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit,” the economic loss rule does not apply. *Chapman Custom Homes*, 445 S.W.3d at 718 (citations omitted); *see also Sullivan v. PS Funding Inc.*, 2021 WL 3556958, at *2 (N.D. Tex. July 15, 2021) (Toliver, J.) (“[I]f the defendant’s conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract.”), *rec. adopted*, 2021 WL 3553483 (N.D. Tex. Aug. 11, 2021) (Kinkeade, J.).

B

Delta maintains that the economic loss rule bars plaintiffs’ negligence claims because their alleged damages are the type of “economic losses that the rule channels into warranty and contract, not tort,” and the duty alleged—reasonable care in testing, labeling, and distribution—arises entirely from the product-supply relationship between Delta and Skyrise.

D. Br. (ECF No. 13) at 13.

Regarding their negligent misrepresentation claim, plaintiffs respond that they have not merely pleaded negligent performance of a contractual promise between Delta and Skyrise but have instead alleged that Delta, in the course of its business, supplied information for the guidance of downstream purchasers and failed to exercise reasonable care in obtaining and communicating that information. Regarding their negligence and gross negligence claims, plaintiffs respond that Skyrise did not directly contract with Delta, that they have alleged consequences extending beyond the difference in value between conforming and nonconforming goods, and that they

> recognize that the negligence claim presents a closer economic-loss question than the DTPA and warranty claims. But any ruling on negligence should be confined to negligence. It does not dispose of the independent statutory, warranty, or fraudulent-inducement duties pleaded elsewhere.

Ps. Br. (ECF No. 22) at 22.

C

In *Equistar Chemicals, L.P. v. Dresser-Rand Co*, 240 S.W.3d 864, 867 (Tex. 2007), the Supreme Court of Texas explained that

> [i]n transactions governed by the Business and Commerce Code the seller has the duty to furnish goods complying with the applicable contractual implied warranty unless the warranty is excluded or modified. The warranties exist regardless of whether they are breached. When the Business and Commerce Code and its warranty provisions apply, the economic loss rule measures the damages recoverable.

(internal citations omitted) (citing Tex. Bus. & Com. Code Ann. § 2.316; *Nobility Homes of*

*Tex., Inc. v. Shivers*, 557 S.W.2d 77, 80 (Tex. 1977)); *see also Nobility Homes*, 577 S.W.2d at 80 ("The [Uniform Commercial] Code was drafted specifically to govern commercial losses and obviously provides the proper remedies to recover such losses.").

In the present case, to the extent that Delta owed a duty to the downstream purchasers of its products, it appears that this duty arose under the warranty provisions of the Texas Business and Commerce Code. Plaintiffs do not argue otherwise.[7] Nor do they adequately explain why the economic loss rule does *not* apply, arguing only that the "economic-loss rule presents a substantial issue for the ordinary-negligence theory but does not support dismissal of Plaintiffs' independent statutory, warranty, and fraud claims." Ps. Br. (ECF No. 22) at 21. Accordingly, the court grants Delta's motions to dismiss these claims on the ground that the economic loss rule precludes plaintiffs from recovering in tort for the economic losses resulting from Delta's defective (or defectively-labeled) product.

X

Delta moves to dismiss plaintiffs' products liability/strict liability claim on the ground that the amended complaint fails to allege physical injury or other property damage, as required for a products liability claim. Plaintiffs concede in their response that the amended

---

[7]Plaintiffs do not identify, in the amended complaint or in their response to Delta's motion to dismiss, the source of Delta's alleged duty with respect to their claims for negligent misrepresentation, negligence, or gross negligence. Although in support of their negligence claim they allege that Delta owed a "duty to exercise reasonable care in formulating, manufacturing, testing, quality-controlling, labeling, packaging, marketing, certifying, and distributing the [Lil Ripper Vapes]," Am. Compl. ¶ 152, they fail to identify the source of this alleged duty.

complaint does not identify any bodily injury caused by the Lil Ripper Vapes or physical damage to property other than the product itself and state that they do not oppose dismissal of this claim. Accordingly, the court grants Delta's motion to dismiss plaintiffs' liability/strict liability claim.

XI

Delta moves to dismiss plaintiffs' "claims" for exemplary damages, indemnity and contribution,[8] and damages resulting from law enforcement's independent investigation and charging decisions. Without suggesting that plaintiffs are entitled to recover any of the foregoing in connection with their remaining claims,[9] the court declines at this stage of the case and on the present briefing to dismiss what are essentially components of the damages plaintiffs might ultimately seek if they are successful on their underlying causes of action.

XII

Although the court is dismissing several of plaintiffs' claims, it will grant them leave to replead. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F.Supp.3d 681, 707 (N.D. Tex. 2014) (Fitzwater, C.J.) ("Because the court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, the court will give Shah an

[8]Plaintiffs do not appear to dispute that their indemnity and contribution allegations are legally insufficient.

[9]As the court has already noted, plaintiffs cannot recover exemplary damages under the DTPA absent plausible allegations of knowing or intentional behavior. *See supra* § III(D).

opportunity to amend his complaint." (citing *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.)). Plaintiffs must file a second amended complaint no later than 28 days after the date this memorandum opinion and order is filed.

* * *

For the reasons explained, the court grants in part and denies in part Delta's motion to dismiss and grants plaintiffs leave to replead.

**SO ORDERED**.

November 3, 2026.

Sidney A. Fitzwater

SIDNEY A. FITZWATER
SENIOR JUDGE